STEVENSON vs. RIDGELY.

1811.
DECEMBER.

Stevenson
vs
Ridgely

APPEAL from *Baltimore* County Court. The plaintiff in the court below, (now appellant,) brought an action of replevin against the defendant, (the appellee,) for 12 hogsheads of tobacco. The defendant pleaded property; and at the trial the plaintiff gave in evidence, that he was the inspector of a public tobacco warehouse established at *Fell's* Point in *Baltimore* county, and that while acting in that capacity twelve hogsheads of tobacco were deposited at that warehouse, for which, after being inspected, twelve several notes were issued by him to the persons who lodged the said tobacco, as appeared by the notes produced in court by the plaintiff. He further gave evidence, that the holders of the said notes presented them to him while he was inspector, and demanded a delivery of the tobacco mentioned in them; that he then delivered to said holders by mistake, other tobacco than that mentioned in the notes, and which were accepted by them in mistake, without any objection on their parts; that the tobacco so delivered was different from that they were entitled to receive; and upon the delivery of the said tobacco the said notes were delivered up to him as inspector; that he was afterwards, and some time before the institution of this suit, removed from his office of inspector, and the present defendant appointed to succeed him; that the said twelve hogsheads of tobacco, for which the said notes were issued, were advertised for sale by the defendant as inspector, under the act of assembly of 1802, *ch.* 27; and that no demand was made for the said tobacco by the plaintiff, until after the publications of the said advertisement. The defendant then prayed the court to direct the jury, that on these facts the plaintiff was not entitled to recover. And the court, [*Nicholson,* Ch. J.] did accordingly so direct the jury, being of opinion, that the surrender of the tobacco notes to the inspector, as such, for the purpose of having the tobacco delivered to the respective holders, transferred no property in the tobacco to the inspector, although other tobacco than that due on the notes was delivered to them, and that to sanction such practices would be to open a door to the most abominable frauds, which might be committed by inspectors upon the several counties in which they reside; that it was the duty of every public officer to

A former inspector of tobacco by mistake delivered to the holders of certain notes, other hogsheads of tobacco than those mentioned in such notes. The hogsheads corresponding with the notes were by that inspector deliver'd over to his successor, and on his, (the successors) advertising them for sale under the act of 1802, *ch.* 27, *s.* 4, they were demanded by the former inspector, and he brought an action of replevin for them—*Held,* that he was not entitled to recover.

1811.

Carroll
vs
Cockey

act correctly in the discharge of his functions, and if he acted incorrectly, even by mistake, he could not avail himself of his own negligence to his own benefit, and to the injury of a third party. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, EARLE and JOHNSON, J. by

*Martin* and *Winder*, for the Appellant; and by
*T. B. Dorsey*, for the Appellee.

JUDGMENT AFFIRMED.

---

DECEMBER.

## CARROLL vs. COCKEY's Adm'rs.

In a deed of conveyance from A to B, for a part of a tract of land called C, described by courses and distances, there was a covenant by A with B, stating that "whereas there issue out of Jones's Falls two races or water courses, into that part of C remaining unsold, which races intersect the S 3 deg E 359 perch line," one of the courses of that part of C, conveyed by A to B, and it was agreed between the parties, and covenanted by A with B, "that B, his heirs and assigns, shall have the full and free use and entire benefit of the said two races or water courses, as soon as they intersect the said S 3 deg. E 359 perch line, and that

APPEAL from *Baltimore* County Court. This was an action of covenant, brought by the appellant against the appellee. At the trial, the plaintiff read in evidence the deed mentioned in the declaration, dated the 18th of July 1788, between *John Cockey*, the defendant's intestate, of the one part, and the plaintiff, of the other part, whereby in consideration of the sum of £3000 current money, the said *Cockey* granted, &c. unto the plaintiff, his heirs and assigns, for ever, all that part of three tracts of land called *Cockey's Trust*, *Hellmore*, & *Cockey's Recovery*, situate in *Baltimore* county, which is contained within the metes and bounds, &c. following, to wit, beginning, &c. containing 300¾ acres of land more or less, &c. The deed contained the following covenants: "And whereas there issue out of *Jones's Falls* two races or water courses into that part of said tract of land called *Cockey's Trust*, still remaining unsold, which said races or water courses intersect the

neither A, nor his heirs, &c will at any time hereafter alter, change or divert, the course of the said two races or courses of water, from their present sources, through their present channel, or injure the said waters in their said courses, but that the same shall flow freely and uninterruptedly through their present channels, until they intersect the said S 3 deg E 359 perch line, except such part thereof as may be necessary to water the meadows of the said A in his lands; and that B shall have free access, with or without workmen, to the sources of the said races, to increase the streams of water, or to do any other matter or thing to them that he may find necessary for their improvement: and that A shall and will at all times hereafter keep the said races or water courses, proceeding from the southwestern most part of the tract called C, in good order and repair, through that tract, until it intersects the said S 3 deg. E 359 perch line"—*Held*, that upon a construction of the whole covenant taken together, the intention of the parties was, that A should permit the water to flow through certain channels over his land, as designated in the covenant for the benefit of B, and that if the water did, at the date of the covenant, flow through those channels or races, A was bound to keep them in such order and repair, as that the water might always after continue to flow as freely as at that time; but that if the water did not and could not come into and flow through the upper race or channel at the date of the covenant, then A was not bound to deepen or widen the race for the purpose of conducting the water to the land purchased by B.